DIALOGUE (PENNOCK v.). See Case No. 10,941.

DIAMOND (WASKERN v.). See Case No. 17,248.

## Case No. 3,876.

### The DIANA.

### [2 Gall. 93.] [1]

Circuit Court, D. Massachusetts. May Term, 1814.

PRIZE PRACTICE—CUSTODY OF PAPERS—DELIVERY OF PRIZE ON BAIL—EVIDENCE—ILLEGAL TRADE—APPEALS.

1. The custody of the papers of captured vessels belongs exclusively to the prize court.

2. It is the duty of captors, immediately upon arrival in port, to deliver, upon oath, all the papers of captured vessels into the registry of the prize court.

[See The Arabella and The Madeira, Case No. 501; The Flying Fish, Id. 4,892.]

3. Prize goods are never delivered on bail until after a hearing; and a contrary practice is a great irregularity. Nor is a claimant ever entitled to a delivery on bail, even after a hearing, unless he show a prima facie legal title to the property. If he claim by an illegal act, he is not entitled to a delivery on bail.

[See Dunl. Adm. Pr. c. 7, p. 174; The Euphrates. Case No. 451. Criticised in The Ella Warley, Id. 4,370.]

4. During war, no claim standing in opposition to the ship's papers and preparatory evidence is ever admitted in a prize court.

[Followed in U. S. v. The El Telegrafo. Case No. 15,049. Cited in The Revere, Id. 11,716.]

[See The San Jose Indiano. Case No. 12.322, and The Ann Green, Id. 414.]

5. No commission to take evidence in an enemy's country is allowable by the practice of the prize courts.

6. A shipment. made after a known war, by an American citizen. from an enemy's port to a port in his colonies, is illegal by the law of war. It is a trading with the enemy.

[Cited in Caldwell v. Southern Exp. Co., Case No. 2,303.]

7. It seems, that if a delivery on bail has been allowed by the district court in a gross case of illegality. the appellate court will not hold itself bound by the transaction; but direct the claimant to account for the whole proceeds on oath.

[Cited in The San Jose Indiano, Case No. 12,322.]

[Appeal from the district court of the United States for the district of Massachusetts.]

The facts in this case were as follows: The ship Diana and cargo were captured by the private armed ship Thomas, commanded by Thomas M. Shaw, on or about the 19th of May, 1813, and sent into the port of Wiscasset, in the district of Maine. for adjudica-

[1] [Reported by John Gallison, Esq.]

tion. From the papers found on board and the preparatory examinations it appeared, that the ship and cargo were duly documented as British property, and that she sailed from Liverpool in Great Britain, in the month of April, 1813, touched at Cork for convoy, and at the time of capture was steering in the regular course of her voyage for Halifax in Nova Scotia, the port of her destination. The cargo consisted altogether of goods of British manufacture, and was consigned, by merchants in Great Britain, to merchants in Halifax. Proceedings on the prize side having been instituted in the district court of Maine, and no claim having been interposed to the vessel, or to any part of the cargo, except thirty-nine cases of merchandise, the whole property, except the thirty-nine cases of merchandise, was condemned, as lawful prize to the captors, at a special district court held on the 23d of June, 1813. The thirty-nine cases of merchandise were claimed by Mr. John Tappan, a native citizen of the United States domiciled at Boston, who in his affidavits of claim asserted, that he verily believed the same merchandises were purchased in England by his agent Mr. John Gregory (who is a merchant, domiciled in England) and shipped by him, on account and risk of the claimant, on board of the Diana, without having previously received from the said claimant any advice or instructions whatsoever, as to the time or manner, in which the said merchandises were to be shipped. In further support of this claim the affidavit of Mr. George Searle was introduced, in which the deponent states his knowledge of the actual agency of Gregory, and certain other facts and information, from which he infers, that the property claimed belonged to Mr. Tappan. At the time of interposing the claim, Mr. Tappan prayed for a delivery of the property on bail, which, after appraisement, was granted by the court. The claim was then continued for further proof, and a commission, as it should seem, was awarded by the court, to take the testimony of witnesses in the enemy's country, in support of the claim. At a special term held in December, 1813, the claim was further heard upon the original evidence, and upon certain letters and papers then produced by the captors, and admitted by the court, as part of the original letters and papers found on board at the time of the capture, and upon an admission made, for that trial only, by the captors, that the property belonged to Mr. Tappan, as claimed. Upon the hearing, the district court awarded a sentence of restitution, from which sentence the captors appealed, and upon that appeal the cause came before this court.

Mr. Pitman, for captors.
G. Blake and Mr. Prescott, for claimant.

STORY, Circuit Justice. It is not easy to extract from the record now before the court a perfect state of the whole case, because no papers have come up, except such as were deemed applicable to this particular claim. As far, however, as the obscure lights of the record, and statements at the bar admitted to be correct, will carry us, it is difficult to conceive a cause more irregularly conducted.

In the first place, it appears, that all the ship's papers and documents were not in the first instance lodged in the registry of the court. This was a very great irregularity. It is the duty of the captors, by the general law of prize, immediately upon arrival in port, to deliver upon oath to the registry of the court, all papers found on board the captured ship. This duty is enforced by the general instructions of the executive in the most positive manner. A strict adherence to it is expected on all occasions; and every deviation will be watched by the court with uncommon jealousy. It is not for the captors to select such papers, as they may deem important, and present them in the cause. Infinite mischiefs and inconveniencies might result from such a course. It would afford temptations to improper suppression of papers, and jeopard the rights, not only of citizens, but of neutrals. In the present case, the papers, which were omitted to be produced, had a most material character. It is said, as an apology, that all the papers were in the first instance produced to the district court, and were deemed not properly to belong to that court, but to the captors, and therefore were returned to their custody. If this be true, and it is not denied by the parties, the irregularity is certainly excusable; and in all probability it was this circumstance, that induced the court below to admit the papers on their last production. I trust, that hereafter it will not be a matter of doubt, to whom the custody of prize papers belongs. The court of prize has a right, and I will add, an exclusive right, to the custody of them.

Another irregularity was the delivery on bail of the property claimed by Mr. Tappan; a delivery, which, from the proceedings in the case, appears to have been considered as a matter of course. I take the practice of the prize court to be, not to deliver property on bail, until after a hearing of the cause, and then only in cases, where the claimant shows a prima facie title, which may ultimately entitle him to restitution. And, if the property be ultimately destined for sale in the country, where the court sits, there is not generally any strong reason for a delivery on bail after appraisement. A much more correct and equitable course for all parties would, in such case, be an order of sale, and a deposit or delivery on bail of the proceeds. It is a matter of public notoriety, that appraisements are extremely inaccurate, and unsatisfactory. And I do not think, that a court can be too strict in guarding against applications of this sort in prize proceedings. Here the application was made upon the ground, that the goods were liable

to deterioration, the very case in which a prize court usually orders a sale under a perishable monition.

The claim too of Mr. Tappan was in total opposition to all the papers and preparatory examination. The ship and cargo were documented as British property, bound from one British port to another British port, nine months after the declaration of war. The papers respecting the shipment now before the Court clearly evince, that it was made on account or risk of Messrs. Forsyth, Black and Co. of Halifax. There is not the slightest intimation of any interest in any other persons. Now I take the general rule to be, that no claim shall be admittted in opposition to the depositions and the ship's papers. It is not an inflexible rule, for it admits of exceptions; but on examination it will be found, that those exceptions stand upon very particular grounds, in cases occurring in time of peace, or at the very commencement of war, and granted as a special indulgence. The Vrow Anna Catharina, 5 C. Rob. Adm. 15; La Flora, 6 C. Rob. Adm. 1. But in times of known war, to admit claims in opposition to all the preparatory evidence and papers, to enable parties to assume the enemy's garb for one purpose, and throw it off for another, would be holding out an invitation to frauds, and subject the court to endless impositions. The rule can never be relaxed to such an extent without prostrating the whole law of prize.

And how was this property to be proved in the claimant in opposition to all the evidence on board of the ship? By the affidavit of the claimant, and by the testimony of the shippers, or consignees, under a commission sent into the enemy's country. The very parties, who are without dispute enemies, are to be permitted to devest themselves of property documented as their own, by swearing a transfer to a neutral or friend, and in that way extract it from the law of prize. A more simple or more effectual mode of eluding the rights of captors could not well be devised. If successful in this instance, (I mean no imputation on the present claimant), it could not well fail of success in every other. The issuing of a commission to take evidence in the enemy's country was also of itself an irregularity, and contrary to the established practice of the prize court. The Magnus, 1 C. Rob. Adm. 31.

On the whole, I am entirely satisfied, that the claim of Mr. Tappan, standing, as it does, in direct opposition to all the papers and preparatory examinations, ought even if he had been a neutral, to have been rejected in limine.

But there is another view, which is so decisive against his claim, that it is difficult to perceive in what manner it could ever have been sustained. Mr. Tappan is an American citizen domiciled in Boston, and now asserts an interest in an enemy's shipment made nine months after the war, in a trade between the enemy's ports. If there ever was a case, in which there could be no doubt that the traffic was illegal, it seems to me to be this case. Upon what pretence can an American citizen, after full knowledge of the war, claim to be rightfully engaged in a commerce with the public enemy, and in a trade too peculiarly his own, a trade between the mother country and its colony? After the decisions of the supreme court in The Rapid, 8 Cranch [12 U. S.] 155; The Sally, 8 Cranch, Id. 382; and the Alexander, 8 Cranch, Id. 169,—it would be useless to discuss the general doctrine of the illegality of a trade with the enemy. It is too plain for argument, that Mr. Tappan's claim must be rejected, even if his proofs of property were incontestable, as he must be deemed to be engaged in a traffic reprobated by the law; and he can never found a claim for restoration by showing his own illegal conduct.

Under these circumstances, where Mr. Tappan had neither a legal nor a documentary title to the property, it is difficult to perceive the ground, upon which a delivery on bail was allowed. The bail bond (it should have been a stipulation) is also incorrect. The terms of it, taken strictly, are inapplicable to the case of a decree of condemnation in an appellate court, and it would require uncommon astuteness to fasten a different construction on the language. Until I saw this record, I had presumed that the proceedings in prize causes, in the first circuit, had at last assumed an uniform regularity. And with the highest respect for the learned judge of the district court of Maine, I have felt it a public duty to notice irregularities, which affect the rights of parties, and introduce so many embarrassments into the prize proceedings.

An objection has been urged by the claimant's counsel against the court's proceeding to adjudication in favor of the captors, upon the ground of the irregular conduct of the captors, in omitting to bring in all the original papers at the first hearing. It is a sufficient answer to that objection, that the papers produced at the first hearing contained sufficient proof of enemies' property, and the claimant's own affidavit is decisive against his claim. It is not for one, who has no legal title before the court, to moot difficulties. If the captors fraudulently suppress papers, the court, in the exercise of its own functions, will take care that they shall derive no benefit from such conduct; but I am yet to learn, that the mere omission to produce papers, by mistake or negligence, especially excused as it is in the present case, is a forfeiture of their rights under the capture. It may induce the court to suspend judgment, to call for exact information, and search with rigorous jealousy; but something more should appear, than mere error, to call forth such penal consequences, supposing it were in the power of the court to apply them. . ..

I am for reversing the decree of the district court, and condemning the property claimed, as good and lawful prize to the captors. As the district judge concurs in the opinion, let a decree be entered accordingly.

Decree reversed. Condemned to the captors with costs and expenses.

After the decree of condemnation, Mr. Pitman, for the captors, moved the court for a monition to the claimant to bring into court, on oath, an account of the sales of the goods, and to pay the proceeds of the sales into court instead of the appraised value of the goods, upon the ground that the property ought not to have been delivered on bail, and had been sold by the claimant, within a few days after the appraisement, for $10,000 more than the appraised value.

STORY, Circuit Justice, delivered the opinion of the court.

Without meaning to say, that in no case the court ought to grant a monition to the effect prayed for, we shall deny the present application. Cases of gross fraud, and perhaps other cases may exist, in which it would be proper to order the whole proceeds into court, notwithstanding a delivery on bail. We shall issue a monition to the party to pay into court the appraised value pending the term. Although he has claimed an appeal to the supreme court, which will be allowed on filing the proper security, we think that the circumstances of the case require the court to lay its hands on the property. Where the title of the claimant is so palpably unsound, he ought not to profit by any delays incident to the prosecution of an appeal.

The appeal was abandoned.